## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

AMERICA FIRST LEGAL FOUNDATION,
611 Pennsylvania Avenue SE #231
Washington, DC 20003
     *Plaintiff,*

     v.

CENTERS FOR DISEASE CONTROL AND
PREVENTION,
1600 Clifton Road
Atlanta, GA 30329-4027

     *Defendant.*

Civil Action No.: 22-978

---

## <u>COMPLAINT</u>

### <u>Summary of the Case</u>

1.    Plaintiff America First Legal Foundation ("AFL") brings this action against Defendants Centers for Disease Control and Prevention ("CDC") to compel compliance with the Freedom of Information Act ("FOIA") 5 U.S.C. § 552.

2.    On July 15, 2021, White House Press Secretary Jen Psaki said that the Biden Administration was increasing its efforts to track COVID-19 "disinformation." She said that "[i]n terms of actions . . . we've increased disinformation research and tracking. Within the Surgeon General's Office, we're flagging posts for Facebook that spread disinformation." She also said, "those engagements typically happen through members of our senior staff." Ian Schwartz, *WH's Psaki: We're Flagging Problematic Posts for Facebook That Spread Disinformation*, REALCLEARPOLITICS,

1

https://www.realclearpolitics.com/video/2021/07/15/psaki_were_flagging_problemati
c_posts_for_facebook_that_spread_disinformation.html (Jul. 15, 2021).

3.     The following day, AFL filed a Freedom of Information Act ("FOIA")
request with the Centers for Disease Control and Prevention ('CDC") related to the
CDC's role in efforts to flag COVID-19 or COVID-19 vaccine related "misinformation"
or "disinformation" for social media companies.

4.     AFL requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)
and agency regulations. The CDC granted AFL's request for expedited processing on
July 22, 2021, and then, on the same day, sent a letter to AFL stating that it was
"unable to process your request as it is currently stated" because it was "unduly
burdensome."

5.     AFL disagreed with CDC's assertion that the request was "unduly
burdensome but repeatedly attempted to work with CDC to address its concerns.  For
example, AFL advised CDC that it prioritized CDC's communications with Twitter,
Facebook, Instagram, and YouTube and requested that CDC search its records for
communications between employees and email addresses with these domain names.

6.     CDC, in turn, demanded AFL provide a custodian list of 5 to 10 people
to search. AFL repeatedly informed CDC that it could not offer such a narrow list of
names because it had no way of knowing who from CDC was communicating with the
companies Jen Psaki referenced.

7.    AFL repeatedly asked, over phone and via email, whether CDC had the technical capability to run a search among all employees for communications with a specific domain address. To this day, CDC has not answered that question.

8.    AFL's request is not unduly burdensome. First, communications with external organizations take very little effort to process. Because they are already communications with non-governmental actors, there are very few, if any redactions that the agency can apply. Moreover, the activities involved concern the government direction to social media companies to censor user's postings based on content. Content discrimination is subject to the highest-level of scrutiny under First Amendment analysis. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (2011). If the CDC has the resources to engage in content discrimination, it must certainly have the resources to make those records public.

9.    It should also do so with no redactions. Attorney General Merrick Garland emphasized this point in a Department of Justice memorandum earlier this year when he wrote that proactive "disclosures enable information about federal government operations to be more readily available to all." Memorandum from Attorney Gen. Merrick B. Garland to Heads of Executive Departments and Agencies (Mar. 15, 2022) (https://www.justice.gov/ag/page/file/1483516/download).

10.    On October 19, 2021, CDC confirmed that program staff had completed their search for the requested records and that the case was awaiting final review. But to date, CDC has not produced any records requested by AFL.

11.     Instead, CDC has prevented AFL and the public from obtaining, in a timely fashion, information vital to current and ongoing public debate of critical public policy and Constitutional matters.

12.     The primary value of AFL's requested information lies in the near "real time" transparency it will provide. While information gained from the CDC months or (more likely) years from now may still be of historical value, stale information is of little value in these circumstances. *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).

13.     Due to the political sensitivity of the requested records and based on AFL's knowledge and belief of the Biden Administration's operating procedures with respect to processing FOIA requests from non-ideologically aligned requestors, AFL is concerned that CDC may have intentionally delayed processing AFL's request to hide facts and to prevent public scrutiny of controversial Biden Administration policies.

<u>Jurisdiction and Venue</u>

14.     The Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201.

15.     Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

<u>Parties</u>

16.     AFL is a nonprofit organization with its principal office in the District of Columbia.

17.     The CDC is an agency under 5 U.S.C. § 552(f), with headquarters at 1600 Clifton Road, Atlanta, GA. It has possession, custody, and control of the requested records.

Facts

18.     On July 16, 2021, AFL submitted request 21-01575-FOIA and requested expedited processing of its request for records relating to CDC's involvement in the flagging of COVID-19 or COVID-19 vaccine related "misinformation" or "disinformation." Exhibit 1.

19.     On July 22, 2021, at 9:44 AM, CDC sent an acknowledgement letter that granted expedited processing and classified the request as complex. Exhibit 2.

20.     On July 22, 2021, at 10:11 AM, CDC sent another letter to AFL and stated that CDC was "unable to process your request as it is currently stated" because it was "unduly burdensome." Exhibit 3.

21.     On July 22, 2021, at 10:39 AM, AFL responded to CDC's letter via email and objected to CDC's determination that AFL's request was "unduly burdensome" and asked for clarification regarding CDC's determination that AFL's request was overbroad or "unduly burdensome." Exhibit 4.

22.     On July 22, 2021, at 1:05 PM, CDC responded with a second letter, nearly identical to the first, but with an additional paragraph that stated, in part, "[p]lease provide some specificity such as the names of three to four specific CDC…employees that may have been the direct custodian of the records you are

seeking, as well as the context of the records you seek." The letter went on to say, "[p]lease note that terms such as COVID-19 are ubiquitous given the enormous amount of records since the inception of COVID-19. You will need to confine the scope of your request to a very small and specific scope of records to reduce the burden to the agency." Exhibit 5.

23.     On July 28, 2021, AFL responded via letter to CDC's claims that the request was overbroad or would place an undue burden on the agency and its request that AFL further narrow the scope. AFL reiterated that all the information specified in the request was easily obtainable via simple electronic records searches. AFL also noted that requests 7 through 10 ask for communications with external email domains for about a six-month time period, and pointed out that these requests pose a very small burden to the agency since there are no legitimate redactions that could be applied to, or privileges that could be claimed over, the contents of those records. Exhibit 6.

24.     Between July 30, 2021, and August 4, 2021, AFL and CDC participated in multiple phone calls to discuss AFL's request. AFL specifically asked whether CDC had the technical capabilities to pull email communications from a particular email domain address.

25.     On August 5, 2021, at 1:47 PM, AFL followed-up with the CDC FOIA analyst to inquire as to whether the analyst had spoken with agency IT staff to determine if the agency had the capabilities to pull email communications from a particular email domain address. Exhibit 7.

6

26.     On August 5, 2021, at 3:19 PM, the CDC FOIA analyst responded to AFL and indicated that she was still looking into the CDC's technical capabilities to process AFL's request. Exhibit 8.

27.     On August 12, 2021, at 8:58 AM, the CDC FOIA analyst emailed AFL and requested a phone call to discuss AFL's request. AFL responded and scheduled a call for August 13, 2021, at 11:00 AM.

28.     On August 24, 2021, the CDC FOIA analyst contacted AFL to request a phone call to discuss AFL's request. During the call, AFL requested clarification from the CDC's subject matter experts as to (1) whether the agency had the ability to search all communications with email address that contain "twitter.com", "facebook.com", "instagram.com", etc.; and (2) what the results of CDC's search were. AFL responded with a follow-up email on August 24, 2021, summarizing the discussion. Exhibit 9.

29.     On August 25, 2021, at 2:49 PM, the CDC FOIA analyst followed-up via email and asked that AFL confirm that its request was focused on documents related to COVID-19. Exhibit 10.

30.     On August 25, 2021, at 3:32 PM, AFL responded to CDC and confirmed that AFL's request was interested in "communications between any CDC employee and social media companies relating, in any way, to flagging, reporting, referring, labeling, something as misinformation or disinformation in the COVID or vaccine context." Exhibit 11.

31.     Between September 7, 2021, and October 19, 2021, AFL sent four emails to the CDC FOIA analyst requesting a status update regarding AFL's request and the technical issues AFL and CDC had discussed. AFL did not receive a response from the CDC FOIA analyst. Exhibit 12.

32.     On October 19, 2021, at 9:20 AM, the CDC FOIA analyst finally responded to AFL and stated that she would check the status of the request and follow-up shortly. *See* Exhibit 13.

33.     On October 19, 2021, at 9:31 AM, the CDC FOIA analyst responded to AFL via email and included a letter from CDC which stated that program staff had completed their search for the records requested and that AFL's case was in CDC's office awaiting final review. In its letter, CDC refused to offer a timeframe for completion of the request. Exhibit 14.

34.     On February 16, 2022, AFL emailed the CDC FOIA analyst requesting a status update. The CDC FOIA analyst did not respond. Exhibit 15.

35.     On April 7, 2022, AFL sent an email to the CDC FOIA analyst requesting a status update and reiterating that CDC had stated in October that the records search had been completed and was awaiting final review. The CDC FOIA analyst responded and stated that CDC's internal system reflected that AFL's request was "pending program search." *See* Exhibit 16.

36.     To date, CDC has not produced any of the requested records to AFL.

Claim for Relief

*For Violation of 5 U.S.C. § 552*

37.     AFL repeats paragraphs 1-36.

38.     The record before the agency included:

    a.     Evidence that AFL's core mission included informing and educating the public regarding the operations and activities of the federal government.

    b.     Evidence that AFL intended to give the public access to the records it obtains via the FOIA on its website.

    c.     Evidence that AFL intended to disseminate the information it requested by making the requested records broadly available to the public, scholars, and the media; to use its editorial skills to turn raw materials into distinct work; and to distribute that work to an audience.

    d.     Evidence that   AFL's email list contained over 30,000 unique addresses, its Twitter page had over 11,000 followers, the Twitter page of its Founder and President had over 118,000 followers, and it had another 28,000 followers on GETTR.

43.     AFL should be granted declaratory and injunctive relief under 5 U.S.C. § 552(a)(4)(b).

<u>Relief Requested</u>

WHEREFORE, AFL respectfully requests this Court:

A.     Declare that the records sought by the request, as described herein, must be disclosed pursuant to 5 U.S.C. § 552.

9

B.     Order the Defendant to conduct searches immediately for all records responsive to AFL's FOIA request and demonstrate that they employed search methods reasonably likely to lead to the discovery of responsive records.

C.     Order the Defendant to produce by a date certain all non-exempt records responsive to AFL's FOIA request.

D.     Award AFL attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E).

E.     Grant AFL such other and further relief as this Court deems proper.


April 8, 2022.                                    Respectfully submitted,


                                                  */s/ Reed D. Rubinstein*
                                                  REED D. RUBINSTEIN
                                                  D.C. Bar No. 400153
                                                  AMERICA FIRST LEGAL FOUNDATION
                                                  611 Pennsylvania Avenue SE #231
                                                  Washington, D.C. 20003
                                                  Tel.: (202) 964-3721
                                                  E-mail: reed.rubinstein@aflegal.org

                                                  *Counsel for Plaintiff America First Legal Foundation*