UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICA FIRST LEGAL FOUNDATION,<br><br>          Plaintiff,<br><br>     v.<br><br>CENTERS FOR DISEASE CONTROL AND PREVENTION,<br><br>          Defendant. | Civil Action No. 22-0978 (APM) |

**COMBINED OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT AND REPLY IN FURTHER SUPPORT OF
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

BACKGROUND ....................................................................................................... 1

ARGUMENT .......................................................................................................... 3

   I.   There Is No Ultra Vires or Government Misconduct Exception to Exemptions 4 or 5......... 3

   II.  Defendant Has Adequately Supported Its Tailored Exemption 4 Withholdings. .................. 8

      A.   Meta Has Confirmed It Received Assurances of Confidentiality. .................................. 9

      B.   The Mere Handful of BrandLift Withholdings Are Appropriate Pursuant to Exemption 4. .................................................................................................... 11

      C.   The CrowdTangle Withholdings Are Likewise Appropriate Under Exemption 4. ....... 13

   III. Defendant Has Adequately Supported Its Tailored Exemption 5 Withholdings. ................ 17

      A.   Director Andoh Has Personal Knowledge, Which the Law Does Not Require. ............ 17

      B.   The Tailored Redactions in Question Were for Deliberative Materials. ........................ 21

   IV. Discovery Is Inappropriate and Unwarranted. .................................................... 22

CONCLUSION...................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Accuracy in Media, Inc. v. Dep't of Def.*,
   Civ. A. No. 14-1589 (EGS/DAR), 2020 WL 9439354 (D.D.C. Aug. 27, 2020) ................. 23

*Advancement Project v. Dep't of Homeland Sec.*,
   549 F. Supp. 3d 128 (D.D.C. 2021) ...................................................................... 22

*Am. Immigr. Council v. Customs & Border Patrol*,
   Civ. A. No. 19-2965 (RC), 2023 WL 2755412 (D.D.C. Apr. 3, 2023) ........................... 21-22

*Am. Immigr. Lawyers Ass'n v. Exec. Off. for Immigr. Rev.*,
   830 F.3d 667 (D.C. Cir. 2016) ............................................................................. 7, 8

*Barnard v. Dep't Homeland Sec.*,
   531 F. Supp. 2d 131 (D.D.C. 2008) ...................................................................... 18

*Bonfilio v. Occupational Safety & Health Admin.*,
   320 F. Supp. 3d 152 (D.D.C. 2018) ...................................................................... 22

*Bureau of Nat'l Affs., Inc. v. IRS*,
   24 F. Supp. 2d 90 (D.D.C. 1998) ......................................................................... 22

*BuzzFeed, Inc. v. Dep't of Just.*,
   Civ. A. No. 19-1977 (EGS), 2023 WL 6847008 (D.D.C. Oct. 17, 2023) ........................ 16

*Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*,
   58 F.4th 1255 (D.C. Cir. 2023) ......................................................................... 9, 10, 12

*Climate Investigations Ctr. v. Dep't of Energy*,
   Civ. A. No. 16-0124 (APM), 2017 WL 4004417 (D.D.C. Sept. 11, 2017) ..................... 18

*Cole v. Copan*,
   485 F. Supp. 3d 243 (D.D.C. 2020) ...................................................................... 23

*Cole v. Rochford*,
   285 F. Supp. 3d 73 (D.D.C. 2018) ........................................................................ 23

*Competitive Enter. Inst. v. Dep't of Treas.*,
   308 F. Supp. 3d 109 (D.D.C. 2018) ........................................................................ 6

*Convertino v. Dep't of Just.*,
   684 F.3d 93 (D.C. Cir. 2012) ............................................................................... 23

*Ctr. for Pub. Integrity v. FEC*,
   332 F. Supp. 3d 174 (D.D.C. 2018) ...................................................................... 21

*DiBacco v. Dep't of Army*,
   926 F.3d 827 (D.C. Cir. 2019) ......................................................................... 2, 19

*Emuwa v. Dep't of Homeland Sec.*,
   113 F.4th 1009 (D.C. Cir. 2024) .......................................................................... 2, 19

\* *Food Mktg. Inst. v. Argus Leader Media*,
   588 U.S. 427 (2019) .................................................................... 7, 8, 9, 10, 16, 17

*Haynes v. D.C. Water & Sewer Auth.*,
   924 F.3d 519 (D.C. Cir. 2019) ............................................................................... 23

*Humane Soc'y of U.S. v. Animal & Plant Health Inspection Serv.*,
   386 F. Supp. 3d 34 (D.D.C. 2019) .................................................................... 18, 20

*In re Sealed Case*,
   121 F.3d 729 (D.C. Cir. 1997) ............................................................................... 5, 6

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) ................................................................................. 3

*Majuc v. Dep't of Just.*,
   Civ. A. No. 18-0566 (APM), 2022 WL 266700 (D.D.C. Jan. 28, 2022) ............ 17, 18, 19, 20

*Miller v. Casey*,
   730 F.2d 773 (D.C. Cir. 1984) ................................................................................. 3

*Montgomery v. IRS*,
   40 F.4th 702 (D.C. Cir. 2022) ........................................................................... 19, 20

\* *Protect Democracy Project, Inc. v. Nat'l Sec. Agency*,
   10 F.4th 879 (D.C. Cir. 2021) .................................................................... 1, 3, 5, 6, 7

*Pub. Citizen v. Dep't Agric.*,
   Civ. A. No. 21-1408 (APM), 2022 WL 3139003 (D.D.C. Aug. 5, 2022) ............. 17, 18, 20

*SafeCard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) .............................................................................. 18

*Shapiro v. Dep't of Just.*,
   Civ. A. No. 12-0313 (BAH), 2020 WL 3615511 (D.D.C. July 2, 2020) ............... 23

*In re Subpoena Served upon the Comptroller of the Currency*,
   967 F.2d 630 (D.C. Cir. 1992) .................................................................................. 5

*United States ex rel. Folliard v. Gov't Acquisitions, Inc.*,
   764 F.3d 19 (D.C. Cir. 2014) .................................................................................. 23

*Weissman v. CIA*,
   565 F.2d 692 (D.C. Cir. 1977) .............................................................................. 4, 6

*Wilson Cowan v. FCC*,
   Civ. A. No. 21-0895 (RMM), 2022 WL 4245485 (D.D.C. Sept. 15, 2022) ........... 8

*Wisdom v. U.S. Tr. Program*,
  266 F. Supp. 3d 93 (D.D.C. 2017) ........................................................................ 19

*Wolf v. CIA*,
  473 F.3d 370 (D.C. Cir. 2007) ................................................................................ 3

**Statutes**

5 U.S.C. § 552 ........................................................................................................ 4, 7, 8

50 U.S.C. § 403 ............................................................................................................ 4

**Rules**

Fed. R. Civ. P. 56 ........................................................................................... 18, 23, 24

Defendant, Centers for Disease Control and Prevention ("CDC"), respectfully submits this reply in further support of its motion for summary judgment and opposition to Plaintiff America First Legal Foundation's cross-motion for summary judgment in this action under the Freedom of Information Act ("FOIA").

## BACKGROUND

Working cooperatively together, the parties have narrowed the issues for the Court substantially. *See* Def.'s Summ. J. Br. (ECF No. 29-1, "Def.'s Br.") at 9. The only remaining issues are the propriety of the Exemption 4 and 5 withholdings in certain documents (filed at ECF Nos. 29-8, 29-9). *See id.*; *see also* Pl.'s Resp. to Stmt. of Facts (ECF No. 32-8, "Pl. Resp.") ¶ 27 (confirming that "Exemption 6 is no longer an issue"). The primary argument in Plaintiff's cross-motion is the assertion that "[b]ecause the government cannot use public disclosure laws to withhold records documenting ultra vires agency activity, it should grant the Plaintiff's motion for summary judgment, deny the Defendant's motion for summary judgment, and order the release of records without any further redactions under Exemption 4 or 5." Pl. Br. (ECF No. 32-1, "Pl. Br.") at 2. This argument fails because, even if Plaintiff could establish ultra vires action or government misconduct, there is no such exception to FOIA Exemptions 4 or 5. *See Protect Democracy Project, Inc. v. Nat'l Sec. Agency*, 10 F.4th 879, 888–90 (D.C. Cir. 2021).

Secondarily, Plaintiff raises certain arguments pertaining to Defendant's Exemption 4 withholdings. *See* Pl. Br. (ECF No. 32-1) at 26–32. To respond more fulsomely to those arguments, Defendant attaches the Declarations of Julia Eisman ("Eisman Decl.," attached), a North America Lead for Government, Politics, and Advocacy at Meta Platforms, Inc. ("Meta"), and Lauren Balog Wright ("Balog Wright Decl.," attached), a Product Business Development Manager at Meta. Generally speaking, the Eisman Declaration addresses the BrandLift

withholdings, and the Balog Wright Declaration addresses the CrowdTangle withholdings. Collectively, Meta's declarations, including the Declaration of Carrie Adams ("Adams Decl.," ECF No. 29-5), rebut each of Plaintiff's arguments regarding Defendant's Exemption 4 withholdings, as described further below.

As a tertiary argument, Plaintiff spends approximately ten sentences addressing Defendant's Exemption 5 withholdings. *Id.* at 32–33. Plaintiff appears to urge that Defendant has failed to demonstrate that talking points prepared in advance of a briefing with the government of the United Kingdom were deliberative and that the Declaration of Roger Andoh ("Andoh Decl."), the Director of the FOIA Office for CDC/Agency for Toxic Substances and Disease Registry, Andoh Decl. (ECF No. 29-4) ¶ 2, fails to meet Defendant's burden more generally due to Director Andoh's purported lack of "firsthand knowledge." Pl. Br. (ECF No. 32-1) at 32–33. With respect to the former argument, Defendant submits, as explained below, that it has adequately explained how the talking points in question were deliberative. *See, e.g.*, Andoh Decl. (ECF No. 29-4) ¶¶ 66–70; Exemption 5 *Vaughn* Index (ECF No. 29-6) at 7–8; Exemption 5 *Vaughn* Documents (ECF No. 29-8) at 46 (reflecting the extent of the Exemption 5 withholdings on this issue). With respect to the latter argument, the D.C. Circuit does not require that an agency employee have firsthand knowledge to submit a FOIA declaration. *See Emuwa v. Dep't of Homeland Sec.*, 113 F.4th 1009, 1016 (D.C. Cir. 2024); *DiBacco v. Dep't of Army*, 926 F.3d 827, 833 (D.C. Cir. 2019). In any event, Director Andoh confirmed that he "ha[s] personal knowledge of the matters and facts discussed in this declaration and any attachments to this declaration." Andoh Decl. (ECF No. 29-4) ¶ 3.

With respect to the remaining factual assertions made in Plaintiff's cross-motion, Defendant respectfully refers the Court to the attached response to Plaintiff's statement of facts

(ECF No. 32-7) and reply to Plaintiff's response to Defendant's statement of facts (ECF No. 32-8). Defendant notes that Plaintiff's statement of facts primarily addresses Plaintiff's ultra vires or government misconduct argument, which is an argument foreclosed as a matter of law, *see Protect Democracy*, 10 F.4th at 888–90. Accordingly, Plaintiff's statement of facts is by and large immaterial to the matters for the Court to resolve.

## ARGUMENT

The Court should grant Defendant's motion for summary judgment and deny Plaintiff's cross-motion. The Department has "describe[d] the justifications for nondisclosure with reasonably specific detail [and] demonstrate[d] that the information withheld logically falls within the claimed exemption," and the agency's justifications are "not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). As the D.C. Circuit has noted, "an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Miller*, 730 F.2d at 776 (internal quotation marks omitted; quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)). The Department has fully supported its tailored assertions of FOIA Exemptions 4 and 5.

## I.    There Is No Ultra Vires or Government Misconduct Exception to Exemptions 4 or 5.

Plaintiff's primary argument is that purported, unproven government misconduct or ultra vires action estops the government from withholding any material under FOIA Exemptions 4 or 5. *See* Pl. Br. (ECF No. 32-1) at 2–26. The D.C. Circuit squarely rejected the argument that there is a government misconduct exception to FOIA Exemption 5 just three years ago. *Protect Democracy*, 10 F.4th at 888–90. Plaintiff's argument to the contrary is based on an almost fifty-year-old case that concerned a different FOIA exemption—i.e., Exemption 7. *See* Pl. Br. (ECF

No. 32-1) at 20–26 (citing *Weissman v. CIA*, 565 F.2d 692 (D.C. Cir. 1977)).  Plaintiff appears to recognize that "no court has extended *Weissman's* [sic] beyond Exemption 7 cases."  *Id.* at 22.

As an initial matter, Plaintiff is incorrect in characterizing *Weissman* as importing an ultra vires exception into FOIA case law.  In *Weissman*, the plaintiff submitted a FOIA request pertaining to records regarding the CIA's "extensive investigation over a five-year period of an American citizen living at home, without his knowledge."  *Weissman*, 565 F.2d at 695.  In response, the CIA withheld materials under FOIA Exemptions 1, 3, and 7.  *Weissman*, 565 F.2d at 694.  *Weissman* addressed whether the CIA could demonstrate the antecedent fact necessary to invoke Exemption 7—namely, whether the records were "compiled for law-enforcement purposes."  *Id.*; *see also* 5 U.S.C. § 552(b)(7) (exempting "records or information compiled for law enforcement purposes").  The D.C. Circuit repeatedly noted that 50 U.S.C. § 403 "specifically provided that the '[CIA] shall have no police, subp[o]ena, law-enforcement powers, or internal-security functions.'"  *Weissman*, 565 F.2d at 695 (quoting 50 U.S.C. § 403(d)(3)).  *Weissman* reasons that if an agency has "no . . . law-enforcement powers," then it must not have "compiled [the records] for law-enforcement purposes."  *Id.*  Neither "misconduct" nor "ultra vires" appears at any point in the court's decision and, instead, the court remanded so that the CIA would have a chance "to show that the claim of exemption (b)(3) alone, or coupled with other exemptions, is sufficient to protect the document against disclosure even in the absence of (b)(7)."  *Id.* at 698.  The fact that the court contemplated that the same material could have been withheld under any "other exemptions," not even limiting its statement to Exemption 3, *id.*, further demonstrates that the court did not mean to suggest that an agency cannot invoke FOIA exemptions to withhold material relating to purported ultra vires conduct.

In the intervening years, litigants unable to win on FOIA's statutory text have attempted to assert that vague and unproven allegations of government misconduct or unauthorized activity, such as those that Plaintiff asserts but does not prove here, should require courts to let them see exempt materials. For instance, in *Protect Democracy*, the plaintiff relied on one of the same non-FOIA deliberative process decisions that Plaintiff relies on here to try to create a government-misconduct exception to Exemption 5. *See Protect Democracy*, 10 F.4th at 888–90 (citing *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997)); *see also* Pl. Br. (ECF No. 32-1) at 25–26 (relying extensively on *Sealed Case*). *Sealed Case* explicitly considered whether the government misconduct exception would apply in the FOIA context and confirmed that it does not. The court explained that "[t]he deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need." *Sealed Case*, 121 F.3d at 737. "'[E]ach time [the deliberative process privilege] is asserted the district court must undertake a fresh balancing of the competing interests,' taking into account factors such as 'the relevance of the evidence,' 'the availability of other evidence,' 'the seriousness of the litigation,' 'the role of the government,' and the 'possibility of future timidity by government employees.'" *Id.* at 737–38 (quoting *In re Subpoena Served upon the Comptroller of the Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992)). "For example, where there is reason to believe the documents sought may shed light on government misconduct, 'the privilege is routinely denied,' on the grounds that shielding internal government deliberations in this context does not serve 'the public's interest in honest, effective government.'" *Id.* at 738. Crucially, the court caveated, though, that "[t]his characteristic of the deliberative process privilege is not an issue in FOIA cases because the courts have held that the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure." *Id.* at 737 n.5.

That footnote in *Sealed Case* should have been the death knell for FOIA requestors seeking to use that case to import the government misconduct exception into FOIA litigation.  It is sensible that the interest-balancing required to assess the government misconduct exception has no place in FOIA because a contrary ruling would require the Court to assess "the particular purpose for which a FOIA plaintiff seeks information," which is irrelevant to an Exception 5 case.  *Id.*  The D.C. Circuit confirmed this in *Protect Democracy* three years ago.  *See Protect Democracy*, 10 F.4th at 889 ("To determine whether an invasion of privacy is 'unwarranted,' courts balance the privacy interest against the public interest in disclosure, including any potential interest in airing governmental misconduct.  No such balancing or consideration of public interest is called for under Exemption 5.") (citations omitted).  Plaintiff fails to acknowledge *Protect Democracy* at all.

As the D.C. Circuit confirmed in *Sealed Case* and *Protect Democracy*, the government misconduct exception to the deliberative process privilege "is not an issue in FOIA cases."[1]  *Sealed Case*, 121 F.3d at 737 n.5.  As summarized in *Protect Democracy*:

> There is no precedent binding on this court that recognizes the misconduct exception [Plaintiff] proposes.  [Plaintiff] argues that "it is quite common in a FOIA case for a court to disregard a claim of exemption altogether where a credible allegation of government misconduct is made."  Appellant Br. 31.  But the authority it cites concerns a different FOIA exemption, covering information compiled for

---

[1]     Plaintiff spends a significant portion of its brief failing to distinguish a district court case from 2018 that, foreshadowing the D.C. Circuit's decision in *Protect Democracy* in 2021, likewise concluded that *Weissman* does not import some sort of ultra vires or government misconduct exclusion to Exemption 5.  *See* Pl.'s Summ. J. Br. (ECF No. 31-1) at 22–26 (citing *Competitive Enter. Inst. v. Dep't of Treas.*, 308 F. Supp. 3d 109 (D.D.C. 2018)); *see also Competitive Enter.*, 308 F. Supp. 3d at 118 ("[Plaintiff's] argument, and *Weissman*, are inapposite to this case.  Even if *Weissman*'s reasoning applied beyond FOIA Exemption 7—and several courts have declined to expand it—*Weissman* concerned an explicit congressional limitation on agency authority.") (citation omitted).  Here, Defendant focuses on the subsequent, binding D.C. Circuit case, *Protect Democracy*, 10 F.4th at 889, as that is the case that determines the law in this District.

law enforcement purposes [i.e., Exemption 7].... No such balancing or consideration of public interest is called for under Exemption 5.

*Protect Democracy*, 10 F.4th at 888–89.

Much of the case law rejecting Plaintiff's argument concerns FOIA Exemption 5 because plaintiffs generally do not raise this same argument for Exemption 4. Defendant pauses to emphasize how inappropriate it would be to import an ultra vires exception to FOIA Exemption 4. "FOIA's Exemption 4 . . . shields from disclosure 'trade secrets and commercial or financial information obtained from a person and privileged or confidential.'" *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 431 (2019) (quoting 5 U.S.C. § 552(b)(4)). When Congress enacted FOIA, it sought to "provid[e] private parties with sufficient assurances about the treatment of their proprietary information so they will cooperate in federal programs and supply the government with information vital to its work." *Id.* at 440. Even if there were any accuracy to Plaintiff's gross misapprehension of Defendant's actions, *but see* Def.'s Resp. to Pl.'s Stmt. of Facts (attached, "Def.'s Resp."), Plaintiff appears to portray Meta as being compelled against its will to disclose its confidential information to Defendant in furtherance of Defendant's allegedly nefarious efforts to address a public health crisis. Under Plaintiff's warped theory of the case, Meta should now suffer by having its confidential information disclosed. If Meta were a victim, as Plaintiff would have it (which of course Defendant denies), then Plaintiff would seem to be asking the Court to punish the victim. This does not follow at all.

More fundamentally, at the end of the day, what matters is that the Supreme Court "has repeatedly refused to alter FOIA's plain terms," *Argus Leader*, 588 U.S. at 436, and the D.C. Circuit has likewise confirmed in the specific context of FOIA that courts "must interpret the statute as written." *Am. Immigr. Lawyers Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 678 (D.C. Cir. 2016). Neither Exemption 4 nor Exemption 5, nor FOIA more generally, includes any

sort of language that indicates that an agency cannot withhold material under FOIA when it has allegedly involved itself in misconduct or taken ultra vires action. *See generally* 5 U.S.C. § 552. As the Supreme Court has confirmed, "just as we cannot properly expand Exemption 4 beyond what its terms permit, we cannot arbitrarily constrict it either by adding limitations found nowhere in its terms." *Argus Leader*, 588 U.S. at 439 (citations omitted).

To the extent Plaintiff endeavors to import a wide-ranging exclusion to FOIA's exemptions when there is purported governmental misconduct, unconstitutional action, or ultra vires conduct somehow relating to the records at hand because Plaintiff believes that is necessary to ensure good governance, that is a policy concern "best directed to Congress." *Am. Immigr. Lawyers*, 830 F.3d at 678. Defendant questions, however, whether that would indeed be a good law, or whether that would actually spawn trials within trials to address whether the action at issue was indeed ultra vires, and how a court would determine when a document is sufficiently connected to the purported ultra vires action to invoke the exclusion or when it is not. In any event, it is neither Defendant's nor the Court's role to pass a law: those are the types of questions best left to Congress; "this Court's role is limited to determining whether the agency's decision to withhold the information is consistent with FOIA Exemption 4 [or 5]." *Wilson Cowan v. FCC*, Civ. A. No. 21-0895 (RMM), 2022 WL 4245485, at *11 (D.D.C. Sept. 15, 2022). Accordingly, and in the absence of any authority to the contrary, Defendant respectfully requests that this Court not become the first court to aggrandize for itself the right to create an exclusion to FOIA Exemption 4 or 5.

## II.   <u>Defendant Has Adequately Supported Its Tailored Exemption 4 Withholdings.</u>

Defendant has withheld only a limited set of material under FOIA Exemption 4—namely, materials on sixty-seven pages located at ECF No. 29-9 at 110, 120–22, 137–38, 148–49, 199, 219, 226–37, 244–55, 262–72, 294, 296–304, 315–25. *See* Andoh Decl. (ECF No. 29-4) ¶¶ 20(a),

29; *see also* Exemption 4 Vaughn Documents (ECF No. 29-9). These materials fall into two categories: (1) withholdings relating to BrandLift and (2) withholdings relating to CrowdTangle. *See* Jt. Status Rep. (ECF No. 24) ¶ 4. Plaintiff primarily challenges the CrowdTangle withholdings, although Plaintiff also includes one paragraph on the BrandLift withholdings, as well as an umbrella argument concerning assurances of confidentiality relevant to both categories. *See* Pl. Br. (ECF No. 32-1) at 26–32. Defendant's declaratory support, especially now bolstered by the Balog Wright and Eisman Declarations, fully addresses Plaintiff's arguments.

### A.    Meta Has Confirmed It Received Assurances of Confidentiality.

Citing *Argus Leader*, Plaintiff urges that Defendant is required to demonstrate that Meta received assurances of confidentiality from the government prior to disclosing its confidential information. Pl. Br. (ECF No. 32-1) at 28. As Defendant explained earlier in its opening brief, Def.'s Br. (ECF No. 29-1) at 13–14, *Argus Leader* does not impose that requirement, expressly reserving on that issue. *See Argus Leader*, 588 U.S. at 434–35 ("Can privately held information lose its confidential character for purposes of Exemption 4 if it's communicated to the government without assurances that the government will keep it private? As it turns out, there's no need to resolve that question in this case because the retailers before us clearly satisfy this condition too. Presumably to induce retailers to participate in SNAP and provide store-level information it finds useful to its admin[i]stration of the program, the government has long promised them that it will keep their information private."). Plaintiff has no response.

Without recognition, Plaintiff identifies a recent Exemption 4 case from the D.C. Circuit for an unrelated point that likewise sidestepped this open question from *Argus Leader*. Pl. Br. (ECF No. 32-1) at 26–27 (citing *Citizens for Resp. & Ethics in Wash.* ("*CREW*") *v. Dep't of Just.*, 58 F.4th 1255 (D.C. Cir. 2023)). As *CREW* noted just last year, this open question from *Argus*

*Leader* remains an open question in this Circuit.  *CREW*, 58 F.4th at 1269 ("[T]he [*Argus Leader*] Court held that it need not consider whether privately held information might 'lose its confidential character for purposes of Exemption 4 if it's communicated to the government without assurances that the government will keep it private,' because such assurances had been provided.  We likewise do not decide whether the second condition must be met, because CREW does not dispute the point for purposes of this appeal.") (citation omitted; quoting *Argus Leader*, 588 U.S. at 434–35).

Defendant respectfully reiterates that this Court should follow the same path charted by both the Supreme Court and the D.C. Circuit and avoid issuing an unnecessary ruling on an issue those other courts have held open.  For instance, Ms. Eisman—who was intimately involved in the BrandLift discussions, *see* Eisman Decl. ¶ 4 ("I have personal knowledge of the relevant parts of the Record, and I am included on many communications in the Record.")—confirms not only that, as a matter of practice, "generally, in [her] experience both parties do so with the expectation and understanding that the conversation will remain confidential, given the sensitive nature of the campaign details (such as account and budget information) whose public disclosure could lead to a competitive disadvantage for Meta," *id.* ¶ 8, but also that she specifically "obtained an assurance from the CDC teams that the BrandLift study materials would be kept confidential, given discussions about Meta's cost structure tied to advertising performance, measurement studies, and audience targeting," *id.* ¶ 9.

Likewise, Ms. Balog Wright confirms:

With respect to the CrowdTangle Materials in the Record, Meta sought and received assurances of confidentiality from the CDC in advance of sharing these materials.  When Meta first discussed sharing CrowdTangle reports with the CDC in November 2020, my understanding is that Meta's then-Public Policy lead, Payton Iheme, had conversations with CDC staff asking them to not share the CrowdTangle reports/materials, and access to the tool, outside of the CDC, including with consultants or other government agencies.  In addition, in November 2020, I participated in a call with the CDC in which the terms for Meta's sharing

of CrowdTangle materials with the CDC were discussed. Based on my recollection, other call participants included Payton Iheme and Priya Gangolly from Meta and Carol Crawford from the CDC. On that call, and in other conversations, Meta was very clear that the CrowdTangle materials would be shared only with the CDC, and Meta requested that these reports be kept close-hold and confidential, including through the disclaimer in the upper left-hand corner of the CrowdTangle reports, stating: "Please do not share outside your organization." In response to this request, Carol Crawford of the CDC stated that the CDC understood.

Balog Wright Decl. ¶ 7. Indeed, Ms. Balog's Wright's attestation as to the confidentiality warning on the CrowdTangle reports is confirmed on the one page of a report that Defendant produced in this action. *See* Exemption 4 *Vaughn* Documents (ECF No. 29-9) at 295 (upper left corner: "Please do not share outside of your organization.").[2] Further, Plaintiff cannot dispute that Ms. Balog Wright, as a participant in the meeting she described, accurately described the meeting in question. *See* Balog Wright Decl. ¶ 7. Accordingly, Defendant has demonstrated that Meta received assurances of confidentiality, meaning that there is no reason for the Court to opine on the open question as to whether such assurances are even required under FOIA Exemption 4.

## B. The Mere Handful of BrandLift Withholdings Are Appropriate Pursuant to Exemption 4.

The single paragraph in Plaintiff's summary judgment brief concerning the BrandLift withholdings cites no case law and no record evidence. Pl. Br. (ECF No. 32-1) at 28. There also appears to be a disconnect between the narrow Exemption 4 withholdings that Defendant made for BrandLift versus Plaintiff's characterization of those withholdings. The BrandLift-related withholdings appear on pages 110, 120–22, 137–38, and 148–49 of ECF No. 29-9. Page 110 reflects just targeted in-line redactions within an email, *see* Exemption 4 *Vaughn* Documents (ECF No. 29-9) at 110, and the "[r]edacted material consists of Facebook's estimated dollar figures for

---

[2]     Defendant previously explained why this one page was produced. *See* Def.'s Br. (ECF No. 29-1) at 17 n.3. Defendant "emphasizes that it has carefully examined each of these pages (as it did all pages in these productions) to determine whether these pages could be produced in part without causing foreseeable harm." Andoh Decl. (ECF No. 29-4) ¶ 95; *see also id.* ¶ 32.

ad pricing and expected target audience reach that can be achieved through the execution of a Brandlift test," Exemption 4 *Vaughn* Index (ECF No. 29-7) at 3. For pages 120–22, the "[r]edacted material consists of Facebook's discussions containing descriptions of Brandlift test budget terms, offerings, and recommendations." Exemption 4 *Vaughn* Index (ECF No. 29-7) at 3. For pages 137–38, the "[r]edacted material consists of Facebook's estimated dollar figures for ad pricing and target audience reach." *Id.* at 4. Lastly, for pages 148–49, the "[r]edacted material consists of Facebook's proposed financial terms and Meta's narrative descriptions of budget terms, offerings, and recommendations." *Id.*

Plaintiff's attempted analogy to a news article behind a paywall is not remotely similar to the material actually withheld. *See* Pl. Br. (ECF No. 32-1) at 28. As Ms. Eisman explains, these BrandLift withholdings consist of "commercial information that Meta generally keeps confidential." Eisman Decl. ¶ 7. "This information includes proposed prices for advertising tied to specific target audience reach numbers (i.e., how many people on Meta's platform Meta would expect to view an advertisement)," as well as "narrative descriptions of budget terms and offerings." *Id.* "Meta does not disclose such client-specific pricing and product details to the general public or to third parties, including Meta's partners, in the ordinary course of business." *Id.* This type of pricing and budget details "falls neatly" within Exemption 4. *See, e.g.*, *CREW*, 58 F.4th at 1262 ("CREW does not appeal the Bureau's withholding of clearly commercial information, such as 'price and contract term negotiations' and 'pricing and business strategies,' which fall neatly within Exemption 4.") (citation omitted). Accordingly, Defendant has appropriately withheld this material under FOIA Exemption 4.

**C.      The CrowdTangle Withholdings Are Likewise Appropriate Under Exemption 4.**

Plaintiff's primary Exemption 4 argument is with respect to the CrowdTangle withholdings.  Plaintiff's arguments are threefold: (1) that these reports were purportedly available to the public; (2) that Meta's discontinuation of CrowdTangle should impact the Court's analysis; and (3) that Defendant has not demonstrated foreseeable harm.  Defendant responds to each argument below.

First, Plaintiff urges that, "[i]f any member of the public who had a CrowdTangle account could have requested and obtained the same report, then they cannot be protected under Exemption 4."  Pl. Br. (ECF No. 32-1) at 31.  Even if that were an accurate description of the law, Plaintiff's "if-statement" is not an accurate description of the CrowdTangle reports, and Plaintiff cites no admissible evidence that would support its inaccurate description.  *See* Balog Wright Decl. ¶ 8 ("I understand that the plaintiff has stated in its Motion for Summary Judgment that CrowdTangle reports were available for free to any member of the public who created a CrowdTangle account.  That is not accurate.") (citation omitted).  As Meta explains, "[w]hile some CrowdTangle Live Display dashboards were made publicly available to those who registered with Meta to receive them, the reports at issue in the Record were not made publicly available."  *Id.* "CrowdTangle was not an open-access tool."  *Id.*  "In order to be onboarded to CrowdTangle and those functionalities—which could generate reports and insights such as those in the CrowdTangle reports in this Record—third parties had to be onboarded to CrowdTangle by a CrowdTangle team member after meeting specific Meta requirements."  *Id.*

Notably, "the CrowdTangle Materials were created by Meta employees based on their expertise regarding how Meta's platforms and the CrowdTangle tool operate."  *Id.*  "The application of this expertise relied on Meta's proprietary information and databases."  *Id.*  This is

undoubtedly commercial information.  *See* Adams Decl. (ECF No. 29-5) ¶ 9 (confirming that the "[m]aterials related to CrowdTangle . . . are commercial, in that they are created by Meta in the regular course of business, and the creation and distribution furthers Meta's business goal of offering its users a safe and enjoyable platform," with the reports being "created based on an internally developed set of themes and keywords relating to trending content").  Disclosure of this information "would be commercially detrimental to Meta because it may give insights into how Meta thinks about identifying and searching for viral content." *Id.*; *see also* Balog Wright Decl. ¶ 10 ("The CrowdTangle Materials in the Record remain confidential and not publicly disclosed, and they were created using Meta's proprietary and confidential data, analytics, and know-how that remain proprietary and confidential.").

Second, Plaintiff urges that because CrowdTangle is no longer an offered service, Defendant's Exemption 4 withholdings must fail.  As an initial matter, Defendant notes that CrowdTangle had not been discontinued at the time Defendant filed its opening brief, which is why this argument was not previously addressed.  Meta has now confirmed that it "replaced the CrowdTangle product with another product as of August 2024." Balog Wright Decl. ¶ 10.  Meta has confirmed that this product discontinuation has not reduced Meta's interests in protecting its confidential and proprietary information. *See id.* ("[T]his replacement does not change the relevant circumstances here.  The CrowdTangle Materials in the Record remain confidential and not publicly disclosed, and they were created using Meta's proprietary and confidential data, analytics, and know-how that remain proprietary and confidential.").  It is not surprising that a business decision as to whether to continue to offer a service would not impact the company's confidentiality interests relating to the discontinued service, especially if disclosure would result

in the disclosure of the company's "propriety and confidential data, analytics, and know-how that remain proprietary and confidential." *Id.*

Third, for reasons related to the two reasons addressed above, Plaintiff urges that Defendant has not demonstrated that it reasonably foresees harm from disclosure. Avoiding disclosure of information that was "created using [a company's] proprietary and confidential data, analytics, and know-how that remain proprietary and confidential," *id.*, is at the heartland of Exemption 4. "Disclosing internal discussions and analysis related to the CrowdTangle reports in full and in aggregate would be commercially detrimental to Meta because it provides insights into how Meta thinks about identifying and searching for viral content." Exemption 4 *Vaughn* Index (ECF No. 29-7 at 6–10; *see also* Adams Decl. (ECF No. 29-5) ¶ 9. Disclosure of this material would result in "competitive disadvantages for Meta." Adams Decl. (ECF No. 29-5) ¶ 6.

As Director Andoh explained, "Congress understood that government agencies need to receive confidential business information from private businesses from time to time in order to fulfill their functions." Andoh Decl. (ECF No. 29-4) ¶ 40. "Congress enacted Exemption 4 to give businesses assurance that their material may be provided to government agencies without it necessarily be disclosed to the world at large." *Id.* "If companies do not trust that CDC will protect their confidential business information, then they will not be as forthcoming with CDC, which will cause downstream consequences in a variety of cases having nothing to do with COVID-19 or the particular topics at issue today." *Id.* "Compelled or voluntary disclosure of the materials at issue here would increase the risk that other businesses will refuse to provide information they believe to be confidential to CDC in the future, and CDC foresees that it would be harmed by either voluntarily disclosing this information or by being ordered by the Court to do so." *Id.* "CDC reiterates that it has engaged in extensive discussions with Meta and has exercised its independent

judgment: that judgment is that further release of this material will harm both Meta and, due to concerns about how other businesses will shield information from CDC in the future, CDC itself." *Id.*

Here, Meta's declarations fully support that Meta would suffer harm from further disclosure; however, even if the Court had any lingering doubts, Defendant emphasizes the harm that Defendant itself would suffer in the future if the Court were to order it to disclose Meta's confidential business information. To satisfy the foreseeable harm requirement, an agency "must explain how disclosing, in whole or in part, the specific information withheld under Exemption 4 would harm an interest protected by this exemption." *BuzzFeed, Inc. v. Dep't of Just.*, Civ. A. No. 19-1977 (EGS), 2023 WL 6847008, at *6 (D.D.C. Oct. 17, 2023) (quotation marks omitted). One of those interests is "providing private parties with sufficient assurances about the treatment of their proprietary information so they will cooperate in federal programs and supply the government with information vital to its work." *Argus Leader*, 588 U.S. at 440. If private parties suspect that Defendant will not protect their confidential information, then future private parties will be less willing to supply it with information vital to its work. *See* Andoh Decl. (ECF No. 29-4) ¶ 96 ("With respect to the CrowdTangle reports in particular . . . . CDC expects that further disclosure of these reports would cause foreseeable harm to Meta and that, if further disclosure were compelled here, CDC would suffer harm in the future due to businesses being less willing to provide their confidential business information to CDC."). The Court must consider not only the harms to Meta, but also the downstream harms to Defendant for future cases. Indeed, Meta's interests in preventing harm to itself, which Meta's declarations fully support, are not the sole consideration for the Court, which must protect "other governmental interests—interests that may include providing private parties with sufficient assurances about the treatment of their proprietary

information." *Argus Leader*, 588 U.S. at 440. Given both the foreseeable harm to Meta but also the foreseeable harm to Defendant itself, Defendant submits that its Exemption 4 withholdings are entirely proper.

### III. Defendant Has Adequately Supported Its Tailored Exemption 5 Withholdings.

With regard to Exemption 5, Plaintiff's opposition does not dispute Defendant's reasonable harm or segregability analyses and instead addresses two arguments: (1) personal knowledge of Defendant's declarant; and (2) for only one withholding on one small portion of page 46 of ECF No. 29-8, Plaintiff disputes whether Defendant has met its burden to demonstrate that the material is deliberative. Neither argument has merit.

### A. Director Andoh Has Personal Knowledge, Which the Law Does Not Require.

Director Andoh is the "Director of the Freedom of Information Act Office for the Centers for Disease Control and Prevention/Agency for Toxic Substances and Disease Registry" and, therefore, the "Freedom of Information Officer" for that agency. Andoh Decl. (ECF No. 29-4) ¶ 2. He has held that position for more than eight years (i.e., well before the COVID pandemic or the presidential administration to which Plaintiff objects). *Id.* ¶ 3. "As the FOIA Officer, [he] supervise[s] and direct[s] the day-to-day activities" of the agency" and "determine[s] whether to release or withhold records, or portions of records, in accordance with the FOIA and the [Department of Health and Human Services'] implementing regulations." *Id.* ¶ 4. He has accordingly "reviewed the documents at issue in [this] litigation." *Id.* ¶ 5. Director Andoh "ha[s] personal knowledge of the matters and facts discussed in [his] declaration." *Id.* ¶ 2.

This Court is well-acquainted with attacks based on the purported lack of personal knowledge of FOIA declarants. *See, e.g.*, *Pub. Citizen v. Dep't Agric.*, Civ. A. No. 21-1408 (APM), 2022 WL 3139003, at *2 (D.D.C. Aug. 5, 2022); *Majuc v. Dep't of Just.*, Civ. A.

No. 18-0566 (APM), 2022 WL 266700, at *3 (D.D.C. Jan. 28, 2022); *Climate Investigations Ctr. v. Dep't of Energy*, Civ. A. No. 16-0124 (APM), 2017 WL 4004417, at *9 (D.D.C. Sept. 11, 2017). As the Court has explained, "Rule 56 of the Federal Rules of Civil Procedure requires that '[a]n affidavit or declaration used to support or oppose a motion . . . be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *Climate Investigations*, 2017 WL 4004417, at *9 (alterations in original; quoting Fed. R. Civ. P. 56(c)(4)). "A FOIA declarant 'satisfies the personal knowledge requirement in Rule 56[(c)(4)] if in his declaration, he attests to his personal knowledge of the procedures used in handling a FOIA request and his familiarity with the documents in question.'" *Id.* (alterations in original; quoting *Barnard v. Dep't Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008)). "The D.C. Circuit has explained that, in this context, the person who coordinates and oversees the search for documents responsive to the FOIA Request is 'the most appropriate person to provide a comprehensive affidavit,' even if that affiant relies on 'partly second-hand' information." *Id.* (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)). Understandably and appropriately then, "[c]ourts routinely have held that declarants in FOIA cases can rely on information obtained through inter-agency consultations without running afoul of hearsay rules." *Majuc*, 2022 WL 266700, at *3; *see also Pub. Citizen*, 2022 WL 3139003, at *2 ("FOIA declarants may rely on information obtained through inter-agency consultation." (quoting *Humane Soc'y of U.S. v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 44 (D.D.C. 2019))).

For instance, in *Majuc*, the plaintiff challenged the government's declaration for lack of personal knowledge due to the declarant's reliance on information obtained through consultations. *Majuc*, 2022 WL 266700, at *3. To prepare her declaration, the declarant, an attorney in the

Department of Justice, Criminal Division's FOIA/Privacy Act Unit, "'had multiple substantive discussions with an attorney in the Criminal Division's Money Laundering and Asset Recovery Section ('MLARS') who was involved in the [ ] investigation into and prosecution of [a bank] for violations of U.S. laws' and 'an MLARS subject matter expert who handles investigations and prosecutions involving financial institutions.'" *Id.* The Court noted that the declarant "states that the statements made are 'on the basis of personal knowledge' and 'on information provided to me by others within the Criminal Division with knowledge of the search and documents at issue in this case and on information acquired by me in the course of performing my official duties in the FOIA/[Privacy Act] Unit.'" *Id.* The Court noted that "[c]ourts routinely have held that declarants in FOIA cases can rely on information obtained through inter-agency consultations without running afoul of hearsay rules," and the declarant "therefore cannot be characterized to lack 'personal knowledge' of the statements set forth in her various declarations." *Id.*

The D.C. Circuit has consistently rebuffed personal-knowledge challenges to agency declarations. *See, e.g.*, *Emuwa*, 113 F.4th at 1016; *Montgomery v. IRS*, 40 F.4th 702, 716 (D.C. Cir. 2022); *DiBacco*, 926 F.3d at 833. For instance, the D.C. Circuit has confirmed that "FOIA declarants are not required to have personal knowledge of the search itself, but rather 'personal knowledge of the procedures used in handling [a FOIA] request and familiarity with the documents in question.'" *Montgomery*, 40 F.4th at 716 (alteration in original; quoting *Wisdom v. U.S. Tr. Program*, 266 F. Supp. 3d 93, 102 (D.D.C. 2017)). And as for the records located after a search, what matters is that "the declaration confirms that [the declarant] reviewed the [records] at issue." *Emuwa*, 113 F.4th at 1016. "Again, no more is required." *Montgomery*, 40 F.4th at 716.

Plaintiff appears to object to the fact that Defendant did not provide a declaration from someone with the National Security Council. Pl. Br. (ECF No. 32-1) at 33. But this Court and

others "routinely have held that declarants in FOIA cases can rely on information obtained through inter-agency consultations without running afoul of hearsay rules." *Majuc*, 2022 WL 266700, at *3. Director Andoh confirmed that he "ma[d]e this declaration based upon both [his] personal knowledge and information that [he] ha[d] received in the course of [his] official duties as the Freedom of Information Officer for CDC, as well as on the basis of information [he] ha[d] received in conducting these consultations and collecting all of this information." Andoh Decl. (ECF No. 29-4) ¶ 6.

Director Andoh's detailed, ninety-nine-paragraph, thirty-six-page declaration provides a thorough description of the records at issue—records which Director Andoh confirmed that he reviewed, *id.* ¶ 5. Director Andoh's declaration also provided the Court with background information regarding the National Security Council, information which he had obtained as a result of these consultations. *See, e.g.*, *id.* ¶ 55 ("For purposes of background, I was informed that . . . [providing a lengthy background summary of the National Security Council and its workings]."); *see also Pub. Citizen*, 2022 WL 3139003, at *2 ("FOIA declarants may rely on information obtained through inter-agency consultation." (quoting *Humane Soc'y*, 386 F. Supp. 3d at 44)).[3] But when it comes to discussing the records themselves, Director Andoh has clear personal knowledge because he has reviewed the documents. *See, e.g.*, *id.* ¶ 5. "Again, no more is required." *Montgomery*, 40 F.4th at 716.

---

[3]     Defendant notes that the National Security Council is part of the Executive Office of the President, *see* White House, *National Security Council*, https://www.whitehouse.gov/nsc/. Plaintiff's argument does not implicate the Court's previously announced concerns as to "out-of-court statements from private third-parties," which it has treated differently. *Pub. Citizen*, 2022 WL 3139003, at *2.

**B.      The Tailored Redactions in Question Were for Deliberative Materials.**

Plaintiff's one argument pertaining to a specific Exemption 5 withholding concerns one page of the documents at issue—i.e., page 46 of ECF No. 20-8.  *See* Pl. Br. (ECF No. 32-1) at 32. Plaintiff appears to suggest that "preparing to receive a briefing from a foreign country [cannot] relate[ ] to the deliberative process of United States government decision making." *Id.*

Director Andoh's declaration spends several paragraphs addressing this one withholding. *See* Andoh Decl. (ECF No. 29-4) ¶¶ 66–70.  "On August 2, 2021, in advance of an interagency briefing scheduled to occur on August 10, 2021, hosted by the [National Security Council], a[] [National Security Council] director circulated an agenda for the upcoming meeting." *Id.* ¶ 66. All recipients were "internal, federal government employees." *Id.* ¶ 68.  "The agenda is pre-decisional because it was prepared before the occurrence of the meeting and was created in anticipation of the upcoming briefing to advise attendees of proposed topics and to provide those attendees with an opportunity to prepare for policy deliberation and discussion." *Id.* ¶ 67.  "In the August 2, 2021 email sent at 4:50 PM from [a National Security Council] director to potential participants, the drafter described proposed topics for consideration at the meeting." *Id.* ¶ 69. "Release of this information would foreseeably harm the [National Security Council's] deliberative process because it would discourage [National Security Council] members and member agencies from openly describing meeting topics," which "would, in turn, reduce the ability of members participating in [ ] briefings and meetings to prepare for meetings and harm the [ ] ability to fully formulate and thoroughly discuss policy planning." *Id.* ¶ 70.

Director Andoh's declaration demonstrates that the agenda is deliberative.  As another court in this District has explained, "[a] meeting agenda prepared before the meeting is necessarily predecisional and inherently deliberative in that staff are suggesting the topics to be discussed at the meeting." *Ctr. for Pub. Integrity v. FEC*, 332 F. Supp. 3d 174, 180 (D.D.C. 2018); *accord Am.*

*Immigr. Council v. Customs & Border Patrol*, Civ. A. No. 19-2965 (RC), 2023 WL 2755412, at *6 (D.D.C. Apr. 3, 2023); *see also Advancement Project v. Dep't of Homeland Sec.*, 549 F. Supp. 3d 128, 140 (D.D.C. 2021). The Court, however, does not need to issue a ruling that categorical to rule in Defendant's favor. Defendant's *Vaughn* index, like Director Andoh's declaration, confirms that "[r]eleasing this internal meeting information would reveal the specific nature of discussions and what potential policy matters were the subject of deliberation." Exemption 5 *Vaughn* Index (ECF No. 29-6) at 7. This is the gravitational center of the deliberative process privilege, and Defendant has provided a thorough accounting of this record. *See, e.g.*, *id.*; Andoh Decl. (ECF No. 29-4) ¶¶ 66–70. Accordingly, the Court should grant Defendant's motion for summary judgment.

## IV.    Discovery Is Inappropriate and Unwarranted.

At times in Plaintiff's response to Defendant's statement of facts, Plaintiff appears to suggest that it would need discovery to respond to Defendant's facts. The "scope of the discovery permitted in [FOIA] actions lies in the court's discretion." *Bureau of Nat'l Affs., Inc. v. IRS*, 24 F. Supp. 2d 90, 92 (D.D.C. 1998). In general, however, discovery in a FOIA case is "permitted only upon a showing that the agency acted in bad faith." *Bonfilio v. Occupational Safety & Health Admin.*, 320 F. Supp. 3d 152, 157 (D.D.C. 2018) (denying discovery and distinguishing the plaintiff's case from cases where there was "record evidence that the agency intentionally destroyed responsive records" after submission of a FOIA request). Indeed, courts in this District have permitted discovery in FOIA litigation only in extraordinary circumstances, when "a FOIA plaintiff 'raises a sufficient question as to the agency's good faith in searching for or processing documents' or 'agency affidavits do not provide information specific enough to enable [the plaintiff] to challenge the procedures utilized.'" *Accuracy in Media, Inc. v. Dep't of Def.*, Civ. A.

No. 14-1589 (EGS/DAR), 2020 WL 9439354, at *12 (D.D.C. Aug. 27, 2020) (alteration in original; quoting *Cole v. Rochford*, 285 F. Supp. 3d 73, 76 (D.D.C. 2018)).

The procedural mechanism for authorizing discovery in a FOIA action in response to a motion for summary judgment is Rule 56(d). *See Shapiro v. Dep't of Just.*, Civ. A. No. 12-0313 (BAH), 2020 WL 3615511, at *6 (D.D.C. July 2, 2020) ("This FOIA-specific aversion to discovery does not change the standard announced in *Convertino* for determining whether to pause summary judgment proceedings under Rule 56(d).") (citing *Convertino v. Dep't of Just.*, 684 F.3d 93 (D.C. Cir. 2012)); *see also Cole v. Copan*, 485 F. Supp. 3d 243, 249–50 (D.D.C. 2020). Rule 56(d) requires a plaintiff to submit an affidavit or declaration, which "must: (1) 'outline the particular facts [the nonmovant] intends to discover and describe why those facts are necessary to the litigation;' (2) 'explain why [the nonmovant] could not produce [the facts] in opposition to the motion [for summary judgment];' and (3) 'show the information is in fact discoverable.'" *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 530 (D.C. Cir. 2019) (alterations in original; quoting *Convertino*, 684 F.3d at 99–100). These are referred to as the three "*Convertino* factors." *Id.* When a plaintiff fails to submit a Rule 56(d) affidavit that adequately addresses each of the *Convertino* factors, the Court "must" deny the Rule 56(d) motion. *See id.* ("This inquiry must be resolved through 'application of the *Convertino* criteria to the specific facts and circumstances presented in the request[.]'" (quoting *United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 27 (D.C. Cir. 2014))).

Here, Plaintiff has not submitted a declaration addressing the *Convertino* factors, cannot satisfy the factors, and has not and cannot argued that Defendant has engaged in bad faith. In fact, Plaintiff has argued not that the Court should pause summary judgment briefing and grant Plaintiff discovery, but rather that the Court should grant Plaintiff's affirmative motion for summary

judgment.  *See* Pl.'s Proposed Order (ECF No. 32-9) at 1.  A party cannot seek to pause summary judgment briefing while simultaneously requesting that the Court grant it summary judgment. Plaintiff's verbiage appears designed to avoid admitting facts that no reasonable person could dispute, as opposed to an earnest effort under Rule 56(d) for discovery.  Any such effort would, in any event, fail, and Defendant's factual assertions are undisputed, as explained in the attached response to Plaintiff's statement of facts.

## CONCLUSION

For all the reasons set forth above and in Defendant's opening brief and supporting declarations, Defendant respectfully requests that the Court grant summary judgment in its favor and deny Plaintiff's cross-motion for summary judgment.

Dated: October 16, 2024                      Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: _____ /s/ *Douglas C. Dreier* _____
      DOUGLAS C. DREIER, D.C. Bar #1020234
      Assistant United States Attorney
      601 D Street, NW
      Washington, DC 20530
      (202) 252-2551

*Attorneys for the United States of America*