**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| **AMERICA FIRST LEGAL FOUNDATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 22-cv-00978 (APM)** |
| | ) | |
| **CENTERS FOR DISEASE CONTROL AND PREVENTION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM OPINION**

**I.**

Before the court in this Freedom of Information Act (FOIA) case are Defendant Centers for Disease Control and Prevention's Motion for Summary Judgment, ECF No. 29 [hereinafter Def.'s Mot.], and Plaintiff America First Legal Foundation's Cross-Motion for Summary Judgment, ECF No. 32 [hereinafter Pl.'s Mot.]. For the reasons that follow, the court grants in part and denies in part the parties' cross-motions. Defendant properly withheld documents under Exemption 5. It also appropriately withheld documents under Exemption 4 except for those related to CrowdTangle.

**II.**

On July 16, 2021, Plaintiff requested that Defendant produce all records of its efforts to "flag COVID-19 or COVID-19 vaccine related 'misinformation' or 'disinformation'" on social media, including any communications with social media companies. Compl., ECF No. 1 [hereinafter Compl.], Ex. 1, ECF No. 1-1, at 2. After following up several times to no avail, Plaintiff filed this action to compel production. Compl. ¶¶ 19–35. Defendant subsequently

released in phases all responsive documents, portions of which were not disclosed under various FOIA exemptions.  *See* Joint Status Report, ECF No. 16, ¶¶ 2–3.  Plaintiff disputed some of the withholdings.  *See id.* ¶ 3.  In response, Defendant re-reviewed more than 1,000 pages of records, *see* Joint Status Report, ECF No. 18, ¶ 3; released some previously undisclosed material, *see, e.g.*, Joint Status Report, ECF No. 19, ¶ 3; and provided Plaintiff with draft *Vaughn* indexes explaining the remaining withholdings, *see* Joint Status Report, ECF No. 24, ¶ 3.

Still, Plaintiff continued to dispute the nondisclosure of certain information.  That included: (1) all Exemption 4 withholdings relating to BrandLift and CrowdTangle, an advertising measurement platform and social-media analytics tool, respectively, devised by Meta Platforms, Inc.; (2) all Exemption 5 deliberative-process withholdings; and (3) all Exemption 6 withholdings of names only.  *Id.* ¶ 4.  Defendant later released the information previously withheld pursuant to Exemption 6.  Def.'s Mot., Def.'s Stmt. of Material Facts, ECF No. 29-2 [hereinafter Def.'s Stmt.], ¶ 26; Pl.'s Mot., Pl.'s Resp. to Def.'s Stmt. of Material Facts, ECF No. 32-8, ¶ 26.  Both parties now move for summary judgment as to the information withheld under Exemptions 4 and 5.

### III.

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  In these cases, the burden is on the agency to show that an exemption applies.  *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 311 (D.C. Cir. 1988).  The agency must show that (1) the requested materials fall within the scope of the exemption, and (2) "it is reasonably foreseeable that release of those materials would cause harm to an interest protected by" the exemption.  *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021) (citing 5 U.S.C. § 552(a)(8)(A)(i)(I)). Summary judgment may be awarded on the basis of declarations that "describe the documents and

the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

The court begins with Exemption 5 and then turns to Exemption 4, first as to BrandLift and then as to CrowdTangle.

**IV.**

Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 therefore prohibits the release of documents that would be privileged in civil discovery, such as materials protected by the attorney-client privilege, the attorney work-product doctrine, or, as relevant here, the deliberative-process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Rockwell Int'l Corp. v. U.S. Dep't of Just.*, 235 F.3d 598, 604 (D.C. Cir. 2001). The deliberative-process privilege shields from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears*, 421 U.S. at 150 (internal quotation marks omitted). The documents must therefore be "both predecisional and deliberative." *Reps. Comm. for Freedom of the Press*, 3 F.4th at 362 (citing *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021)). "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *Sierra Club*, 592 U.S. at 268 (citing *Sears*, 421 U.S. at 150–52).

Pursuant to this exemption, Defendant withheld meeting agendas and summaries of conclusions from meetings. *See* Def.'s Stmt. ¶ 16. Plaintiff does little to dispute that these withholdings satisfy the privilege's requirements. *See generally* Pl.'s Mot., Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot., ECF No. 32-1 [hereinafter Pl.'s Opp'n]. Plaintiff instead argues that the redacted information relates to unlawful conduct and thus cannot be validly withheld. As Plaintiff sees it, Defendant's efforts to flag COVID-19-related misinformation both exceeded its statutory authority and constituted impermissible viewpoint discrimination in violation of the First Amendment. *See id.* at 4–19. Because Defendant "cannot use public disclosure laws to withhold records of unlawful/unauthorized agency activity," it may not claim the deliberative-process privilege for these records under Exemption 5. *See id.* at 19–25.

D.C. Circuit precedent expressly forecloses Plaintiff's argument. In *Rudometkin v. United States*, the court "reject[ed] [the plaintiff's] claim that allegations of government misconduct can overcome Exemption 5's deliberative-process privilege." 140 F.4th 480, 492 (D.C. Cir. 2025). This court does the same. Plaintiff's assertion that the deliberative-process withholdings pertain to violations of law therefore does not vitiate Exemption 5's protection.

Plaintiff otherwise only challenges Defendant's deliberative-process withholdings as to an agenda prepared by the National Security Council (NSC) in advance of an interagency briefing with the government of the United Kingdom. *See* Pl.'s Opp'n at 31; Decl. of Roger Andoh, ECF 29-4 [hereinafter Andoh Decl.], ¶ 66.[1] Plaintiff emphasizes that the meeting was intended for

---

[1] Plaintiff challenges Defendant's reliance on Andoh's declaration to support this withholding. Plaintiff argues that Andoh, the agency's FOIA officer, lacks "firsthand knowledge of what NSC did or did not do with certain information." Pl.'s Opp'n at 32. But "[t]he D.C. Circuit has explained that, in this context, the person who coordinates and oversees the search for documents responsive to the FOIA Request is 'the most appropriate person to provide a comprehensive affidavit,' even if that affiant relies on 'partly second-hand' information." *Climate Investigations Ctr. v. U.S. Dep't of Energy*, No. 16-cv-124 (APM), 2017 WL 4004417, at *9 (D.D.C. Sep. 11, 2017) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)). Andoh avers that he is "familiar with the procedures followed by CDC-FOIA in responding to requests for information," has "reviewed the documents at issue" in this litigation, and is "familiar with the office's handling of the FOIA request." Andoh Decl. ¶ 5. Further, Andoh made

the United Kingdom to brief the United States and argues that "preparing to receive a briefing from a foreign country" cannot "relate[] to the deliberative process of United States government decision making." Pl.'s Opp'n at 31. The court is unpersuaded. The agenda satisfies the privilege's requirements. "A meeting agenda prepared before the meeting is necessarily predecisional and inherently deliberative in that staff are suggesting the topics to be discussed at the meeting." *Ctr. for Pub. Integrity v. FEC*, 332 F. Supp. 3d 174, 180 (D.D.C. 2018); *see also Nat'l Right to Work Legal Def. & Educ. Found. v. U.S. Dep't of Lab.*, 828 F. Supp. 2d 183, 190 (D.D.C. 2011); Andoh Decl. ¶¶ 67, 69. And Plaintiff cites no authority for its contention that the privilege does not apply to documents prepared in advance of a foreign country meeting with United States representatives. *See* Pl.'s Opp'n at 31. Defendant therefore may withhold the agenda under Exemption 5's deliberative-process privilege.

## V.

Exemption 4 allows an agency to withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). To receive Exemption 4 protection, the information "must be commercial in and of itself, meaning it serves a commercial function or is of a commercial nature." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.* (*CREW*), 58 F.4th 1255, 1263 (D.C. Cir. 2023) (internal quotation marks omitted). Information is confidential when "it is customarily kept private, or at least closely held, by the person imparting it." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 434 (2019).

---

his declaration "based upon both [his] personal knowledge and information that [he] ha[s] received in the course of [his] official duties . . . , as well as on the basis of information [he] ha[s] received in conducting these consultations and collecting all of this information." *Id.* ¶ 6; *see also id.* ¶ 55. The court therefore may rely on the Andoh declaration. *See, e.g.*, *Climate Investigations*, 2017 WL 4004417, at *9; *Canning v. U.S. Dep't of State*, 134 F. Supp. 3d 490, 510 (D.D.C. 2015); *Montgomery v. IRS*, 40 F.4th 702, 716 (D.C. Cir. 2022).

FOIA requires more than a showing of the bare applicability of an exemption. *Greenspan v. Bd. of Governors of the Fed. Rsrv. Sys.*, 643 F. Supp. 3d 176, 186 (D.D.C. 2022). An agency may withhold records only if it "reasonably foresees that disclosure would harm an interest protected by" a FOIA exemption or if disclosure is otherwise prohibited by law. 5 U.S.C. § 552(a)(8)(A)(i)(I)–(II); *see also Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, 567 F. Supp. 3d 97, 109–10 (D.D.C. 2021). In the Exemption 4 context, the foreseeable-harm standard calls for a showing of "foreseeable commercial or financial harm to the submitter upon release of the contested information." *Seife v. FDA*, 43 F.4th 231, 242 (2d Cir. 2022).

### A.

To start, the court rejects Plaintiff's argument that allegations of government misconduct can overcome Exemption 4 withholdings. Plaintiff relies extensively on *Weissman v. CIA*, 565 F.2d 692 (D.C. Cir. 1977), for this proposition. *See* Pl.'s Opp'n at 20–21; Pl.'s Reply Mem. in Supp. of Pl.'s Cross-Mot., ECF No. 36 [hereinafter Pl.'s Reply], at 9. But *Weissman* is about Exemption 7, which shields from disclosure "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). The court determined that, to the extent the agency took unauthorized action, it could not claim the law-enforcement exemption. *See Weissman*, 565 F.2d at 694–96. But the court did not graft a government-misconduct exception onto any other FOIA exemption. *See Protect Democracy Project, Inc. v. NSA*, 10 F.4th 879, 888–89 (D.C. Cir. 2021); *In re Sealed Case*, 121 F.3d 729, 737–38 & n.5 (D.C. Cir. 1997). In fact, Plaintiff concedes that no court has extended this exception beyond Exemption 7. Pl.'s Reply at 8. This court declines to be the first.[2]

---

[2] It is worth noting that such an exception would be difficult to square with Exemption 4's purpose, which is to protect the commercial interests of third parties who disclose confidential information to the government. *See CREW*, 58 F.4th at 1263. The government's misuse of private commercial information—of which the disclosing party may not have knowledge—does not change the third party's interest in that information remaining confidential.

**B.**

The court also rejects Plaintiff's challenge to Defendant's withholdings of BrandLift records. Using "brand polling and other brand awareness measurements," BrandLift helps to elucidate the "true value of [users'] Meta ads and how well they perform independent of other marketing efforts." Andoh Decl. ¶ 37. Thus, the records in question contain "proposed financial terms that should be shielded from public disclosure." *Id.* ¶ 35. Plaintiff concedes that "the BrandLift reports . . . are commercial products," Pl.'s Opp'n at 27, so it focuses on their confidentiality. Plaintiff reasons the reports are not confidential because Meta "willingly put [them] on sale," so "[a]ny paying customer" could access them. *Id.*

This argument mischaracterizes Defendant's withholdings. The agency withheld only portions of the BrandLift reports that would reveal information like estimated dollar figures for ad pricing; discussions of BrandLift's test budget terms, offerings, and recommendations; and partners' account numbers. *See* Def.'s Combined Opp'n to Pl.'s Mot. & Reply in Further Supp. of Def.'s Mot., ECF No. 34 [hereinafter Def.'s Reply], at 11–12; *see also* Andoh Decl. ¶ 39; Def.'s Reply, Decl. of Julia Eisman, ECF No. 34-2 [hereinafter Eisman Decl.], ¶ 7. This is "information that Meta generally keeps confidential" and "does not disclose . . . to the general public or to third parties, including Meta's partners, in the ordinary course of business." Eisman Decl. ¶ 7. That is because disclosing it "would have competitive disadvantages to Meta because it may give Meta's competitors insights into the pricing structure of Meta's specific product offerings." *Id.* For that reason, Defendant assured Meta that this information would remain confidential. *Id.* at ¶ 9. "At least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." *Argus Leader*, 588 U.S. at 440; *see also*

7

*Flyers Rights Educ. Fund, Inc. v. FAA*, 71 F.4th 1051, 1056 (D.C. Cir. 2023) (finding as confidential information of which disclosure would "undermine [the company's] competitive position by allowing competitors access to ideas, design details, certification methods, and testing processes" (internal quotation marks omitted)). Defendant accordingly is entitled to withhold those portions of the BrandLift reports.

**C.**

The court finds, however, that Defendant improperly withheld materials pertaining to CrowdTangle. The CrowdTangle reports help third parties "track how information spreads online" by granting them "access to a subset of public information on Facebook and Instagram with additional performance metrics." Def.'s Mot., Decl. of Carrie Adams, ECF No. 29-5 [hereinafter Adams Decl.], ¶ 9; *accord* Andoh Decl. ¶ 41. Exemption 4 is inapplicable to these records for multiple reasons.

First, CrowdTangle is not a commercial endeavor "in and of itself." To qualify as "commercial," information must "demonstrably pertain[] to the exchange of goods or services or the making of a profit." *CREW*, 58 F.4th at 1265. Meta describes CrowdTangle as a "public insights tool" used to "explore public content." *See* Pl.'s Reply at 9 (citing *CrowdTangle*, Meta Transparency Center, https://perma.cc/Q6HE-CG9J). Defendant does not establish how these reports "demonstrably pertain" to Meta's sales or profits. The agency offers that the reports "were created based on an internally developed set of themes and keywords relating to trending content," and those "sorting criteria and keywords . . . reflect Meta's proprietary analyses and judgments." Andoh Decl. ¶¶ 41, 43; Adams Decl. ¶ 9. The D.C. Circuit, however, has excluded "research designs" like these from Exemption 4's protections, as they "only tenuously or indirectly concern the exchange of goods or services or the making of a profit." *See CREW*, 58 F.4th at 1265.

Defendant's related assertion that disclosing the underlying design "*may* give insights into how Meta thinks about identifying and searching for viral content," Adams Decl. ¶ 9 (emphasis added), is both vague and, without more, too attenuated from demonstrably commercial activity to qualify. Such research designs and their reports do not accord with the "intrinsically valuable business information" that Congress, in creating this exemption, sought to shield from public release. *CREW*, 58 F.4th at 1263.

Defendant also contends that the CrowdTangle reports are commercial because they were "created by Meta in the regular course of business" and "further[] Meta's business goal of offering its users a safe and enjoyable platform." Def.'s Mot., Def.'s Mem. of P. & A. in Supp. of Def.'s Mot., ECF No. 29-1 [hereinafter Def.'s Mem.], at 10–11 (quoting Adams Decl. ¶ 9). This reasoning is too broad. If "ordinary course of business" or "furtherance of a company's business goal" were the test, an agency could likely make the case for withholding almost any company record. But the D.C. Circuit has been clear: "not every bit of information submitted to the government by a commercial entity qualifies for protection under Exemption 4." *CREW*, 58 F.4th at 1264 (quoting *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983)).

It is likewise insufficient to assert that the CrowdTangle reports are commercial merely because the "materials were created by Meta employees based on their expertise" and such "expertise relie[s] on Meta's proprietary information and databases." Def.'s Reply at 13; *see also* Decl. of Lauren Balog Wright, ECF 34-3 [hereinafter Wright Decl.], ¶ 8. Even accepting this as true, that does not make the reports "commercial in and of itself." *See CREW*, 58 F.4th at 1263, 1266. The withholdings still must pertain to making sales or a profit, and the agency has failed to make that showing.

Second, even if the withheld information were commercial, it fails to meet the remaining Exemption 4 requirements. The CrowdTangle reports are not confidential. Put simply, "it is hard to see how information could be deemed confidential if its owner shares it freely." *Argus Leader*, 588 U.S. at 434. Meta describes the CrowdTangle platform as "publicly available" at no cost to anybody who "registered." Wright Decl. ¶ 8. To be sure, Defendant avers that the reports were not available publicly, because users had to meet specific Meta access requirements before they could use that CrowdTangle function. *See* Def.'s Reply at 13; Wright Decl. ¶ 8. But even so, Defendant fails to demonstrate that Meta kept this information sufficiently confidential. Defendant does not, for example, share the quantity or identities of third parties to whom Meta granted access, precluding a finding that the reports constituted only "[l]imited disclosures, such as to suppliers or employees." *See Jud. Watch, Inc. v. U.S. Dep't of Treasury*, 802 F. Supp. 2d 185, 205–06 (D.D.C. 2011) (internal quotation marks omitted); *accord Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 93 F. Supp. 2d 1, 17–18 (D.D.C. 2000) (citing *Critical Mass Energy Project v. Nuclear Reg'y Comm'n*, 975 F.2d 871, 879–80 (D.C. Cir. 1992)). Nor does Defendant state that Meta placed restrictions on how third parties could disseminate the information to others. *See Jud. Watch, Inc. v. U.S. Dep't. of Def.*, 963 F. Supp. 2d 6, 15 (D.D.C. 2013). Without such showings of confidentiality, Defendant has not met its burden. *See Critical Mass.*, 975 F.2d at 879.

Finally, considering that the CrowdTangle reports are neither commercial nor confidential, disclosure of the reports would not cause foreseeable harm to the interests protected by the exemption. *See Seife*, 43 F.4th at 240–41. Defendant accordingly is not entitled to withhold the CrowdTangle reports under Exemption 4.

## VI.

For the foregoing reasons, the parties' cross-motions for summary judgment, ECF No. 29 & ECF No. 32, are granted in part and denied in part.  A final, appealable order accompanies this Memorandum Opinion.

Dated:  June 15, 2026

Amit P. Mehta
United States District Judge